PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| **United States District Court** | District |
|---|---|

| Name *Damien Edwards* | Prisoner No. *95A1375* | Case No. |
|---|---|---|

| Place of Confinement *Fishkill C.F.* | **11  CV  0052** *R* |
|---|---|

| Name of Petitioner (include name under which convicted) *Edwards* | Name of Respondent (authorized person having custody of petitioner) V. *Fishkill* |
|---|---|

The Attorney General of the State of:

## PETITION

1.  Name and location of court which entered the judgment of conviction under attack    *County* *OF Kings*

2.  Date of judgment of conviction    *November 26 1994*

3.  Length of sentence    *20 To Life*

4.  Nature of offense involved (all counts)    *MURDER 2*

5.  What was your plea? (Check one)

    (a) Not guilty    ☑

    (b) Guilty    ☐

    (c) Nolo contendere    ☐

    If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

6.  If you pleaded not guilty, what kind of trial did you have? (Check one)

    (a) Jury    ☑

    (b) Judge only    ☐

7.  Did you testify at the trial?

    Yes  ☐    'No  ☑

8.  Did you appeal from the judgment of conviction?

    Yes  ☑    No  ☐

- 2 -

9. If your answer to 8. was "yes," <u>attach a copy of the appeals court decision to this petition</u> and answer the following:

(a) Name of court (e.g., NYS Sup. Court, 4th Dept.)   *Supreme court State of New York Appellate Division second Department*

(b) Result   *Denied*

(c) Date of result and citation, if known

(d) List <u>all</u> grounds you raised (1)   *MISSING MATERIAL WITNESS ORDER*

(2)   *EFFECTIVE ASSISTANCE OF COUNSEL*

(3)   *EXCESSIVE SENTENCE*

(4)   *AFFIRMATION OF JUDGMENT*

10. Did you seek further review of the appeals court decision by a higher state court (e.g., the NYSCourt of Appeals)?

Yes  ☑   No  ☐

11. If your answer to 10. was "yes," <u>attach a copy of the higher state court decision to this petition</u> and answer the following:

(a) Name of court

(b) Result   *DENIED*

(c) Date of result and citation, if known

(d) List <u>all</u> grounds you raised (1)

(2)

(3)

(4)

12. Did you file a petition for certiorari in the United States Supreme Court?

Yes  ☐   No  ☑

13. If your answer to 12. was "yes," <u>attach a copy of the United States Supreme Court decision to this petition</u> and please answer the following with respect to each direct appeal you asked the United States Supreme Court to review:

(a)  Result _____

_____

(b)  Date of result and citation, if known _____

(c)  List all grounds you raised (1) _____

_____

(2) _____

_____

(3) _____

_____

(4) _____

_____

14.  Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g. a petition under NY CPL § 440, a state habeas petition, or a previous petition under 28 U.S.C. 2254) with respect to this judgment in any court, state or federal?

Yes  ☐    No  ☐

15.  If your answer to 14. was "yes," attach a copy of that court's decision to this petition and give the following information:

(a) Name of court _____

(b) Nature of proceeding _____

(c) Date Filed _____

(d) List all grounds you raised (1) _____

_____

(2) _____

_____

(3) _____

_____

(4) _____

_____

(e) Did you receive an evidentiary hearing on your petition, application, or motion?

Yes  ☐    No  ☑

(f) Result _____

(g) Date of result _____

16.  If your answer to 14. was "yes" and you also filed a <u>second</u> petition, application, or motion, <u>attach a copy of that court's decision to this petition</u> and give the same information:

(a) Name of court _____

(b) Nature of proceeding _____

(c) Date Filed _____

(d) List <u>all</u> grounds you raised (1) _____

_____

(2) _____

_____

(3) _____

_____

(4) _____

_____

(e) Did you receive an evidentiary hearing on your petition, application, or motion?

Yes  ☐    No  ☑

(f) Result _____

(g) Date of result _____

As to any third, fourth, etc. petition, application, or motion, <u>attach a copy of that court's decision to this petition</u> and give the same information asked for under 15. and 16.

17.  If your answer to 14. was "yes" and if the court did not grant the petition(s), application(s), or motion(s) you listed under 15. and 16., did you appeal to an intermediate court of appeals (e.g., the New York State Court of Appeals or the Second Circuit Court of Appeals)?

Yes  ☑    No  ☐

18.  If your answer to 17. was "yes," <u>attach a copy of the appeals court decision to this petition</u> and answer the following regarding <u>each</u> petition, application, or motion:

(a) Name of court _____

(b) Date Filed _____

(c) Result _____

(d) Date of result and citation, if known _____

(e) List <u>all</u> grounds you raised (1) _____

(2) _____

(3) _____

(4) _____

19.    Did you appeal to the highest state court (e.g., the NYS Court of Appeals) or the United States Supreme Court for review of decisions regarding the petition(s), application(s), or motion(s) you listed in 15. and 16.?

(a) First petition       Yes ☐      No ☐

(b) Second petition     Yes ☐      No ☐

(c) Third petition      Yes ☐      No ☐

[List any other petition and indicate yes or no.]

20.    For <u>each</u> "yes" answer in 19., <u>attach a copy of that court's decision to this petition</u> and give the following information:

(a) Name of court _____

(b) Date filed _____

(c) Result _____

(d) Date of result and citation, if known _____

(e) List <u>all</u> grounds you raised (1) _____

(2) _____

(3) _____

(4) _____

21.    If you did <em>not</em> appeal from the adverse action on any petition, application, or motion, explain briefly why you did not:

_____

_____

_____

22.     State *concisely* every ground on which you claim that you are being held unlawfully.  Summarize briefly the *facts* supporting each ground.  If necessary, you may attach pages stating additional grounds and *facts* supporting same.

        CAUTION: In order to proceed in federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court.  *See* 28 U.S.C. §2254(b).  If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.  *See* 28 U.S.C. §2244(b).

        For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings.  Each statement preceded by a letter constitutes a separate ground for possible relief.  You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

        Do not check any of these listed grounds.  If you select one or more of these grounds for relief, you must allege facts.  The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a)     Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.
(b)     Conviction obtained by use of coerced confession.
(c)     Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d)     Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
(e)     Conviction obtained by a violation of the privilege against self-incrimination.
(f)     Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g)     Conviction obtained by a violation of the protection against double jeopardy.
(h)     Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.
(i)     Denial of effective assistance of counsel.
(j)     Denial of right of appeal.

A.     Ground one: (E) conviction obtained by the unconstitutional failure of prosecution to disclose to the defendant evidence favorable to the defendant

Supporting FACTS (state briefly without citing cases or law): The jury was charged with flight and there was no flight or nothing to establish flight would the jury have not heard that the out come would of been different at trial

- 7 -

B.   Ground two: _____

Supporting FACTS (state briefly without citing cases or law): I went to get my PAPERS FOR LEGAL STATUS in the United STATES so THERE WAS no Flight i left The COUNTRY LEgitmately And CAME back when i got my documents

C.   Ground three: _____

Supporting FACTS (state briefly without citing cases or law): SPEEDY TRIAL you HAVE TO EXERSISE 6 months in advance not TWO YEARS THEN 6 months POSSESSION of a weapon in second on third when you can't charge second And third without a weapon PRESENT

D.   Ground four: _____

Supporting FACTS (state briefly without citing cases or law): THERE IS nothing As a WRITTEN WAVER not TO be Able TO testify it violates The constitution i had to sign a written waver not to testify by my ATTORNEY advise. Thats why he misrepresented As counsel

23.   If you did not previously present any of the grounds listed in 22A, 22B, 22C, and 22D in any other court, state or federal, state briefly what grounds you did not present and give your reasons for not presenting them: MY APPELATE COUNSEL did not RAISE The most important issues thats why i feel LIKE I was Also misrepresented by counsel

24.  Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?

Yes ☐   No ☑

(a) Name of court _____

(b) Nature of proceeding _____

(c) Date filed _____

(d) List <u>all</u> grounds you raised (1) _____

(2) _____

(3) _____

(4) _____

25.  Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you challenge in this petition:

(a) At preliminary hearing ___ Alan Stutman Trial counsel
Karen Smolar Appelate counsel

(b) At arraignment and plea _____

(c) At trial _____ Alan Stutman _____

(d) At sentencing _____

(e) On appeal _____ Karen Smolar _____

(f) In any post-conviction proceeding _____

(g) On appeal from any adverse ruling in a post-conviction proceeding _____

26.  Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?

Yes ☐   No ☑

27.   Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

Yes ☐   No ☑

(a) If so, give name and location of court which imposed sentence to be served in the future: _____

(b) Give date and length of the above sentence: _____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?

Yes ☐   No ☑

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct.  Executed on

_____
12-14-10
(Date)

_____
Signature of Petitioner

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION: SECOND DEPARTMENT
-------------------------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK,

Respondent,

-against-

DAMIEN EDWARDS,

Defendant-Appellant.

-------------------------------------------------------------------------X

## PRELIMINARY STATEMENT

This is an appeal from a judgment rendered in the Supreme Court, Kings County, on November 21, 1994, convicting appellant, after a jury trial, of Murder in the Second Degree, P.L. §125.25 (1) and sentenced him to a term of 20 years to life (Rappaport, J. at trial and sentence).

Timely notice of appeal was filed. Appellant retained C. Vernon Mason as counsel on appeal. Soon thereafter, Mr. Mason was disbarred and the law firm of Brenner, Chambers, Gant and Getachew succeeded as counsel. That firm dissolved and The Law Office of James Kousouros succeeded counsel on appeal.

Appellant is presently incarcerated pursuant to the judgement being appealed herein.

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION: SECOND DEPARTMENT
------------------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK,

                                        Respondent,

                -against-

DAMIEN EDWARDS,

                                        Defendant-Appellant.
------------------------------------------------------------------X


## QUESTIONS PRESENTED


1.      Whether the defendant was denied an opportunity to present a defense through the the court's
        denial of the defendant's application for a material witness order and the court's failure to admit
        into evidence a material witness' prior testimony.  U.S. Const., Amend. XIV; N.Y. Const., Art. I
        §6.

2.      Whether appellant was denied effective assistance of counsel.

3.      Whether appellant's sentence should be reduced in the interests of justice..

## TABLE OF CONTENTS

PAGE

STATEMENT PURSUANT TO CPLR §5531...............................................................ii

PRELIMINARY STATEMENT...............................................................................iii

QUESTIONS PRESENTED....................................................................................iv

STATEMENT OF FACTS........................................................................................1

ARGUMENT

POINT I

The defendant was denied an opportunity to present a defense through the court's failure to grant the defendant's application for a material witness order and the court's failure to admit into evidence a material witness' prior testimony.  U.S. Const., Amend. XIV; N.Y. Const., Art. I §6......................................................................................................................10

POINT II

The defendant's conviction was obtained in violation of his state and federal constitutional right to the effective assistance of counsel where counsel failed to: (A)  take adequate steps to present a defense; (B) move pursuant to C.P.L. 670.10 for admission of  Ms. Boatwright's prior trial testimony or to make any challenge to the courts' rulings on this issue..........................23

A.   Defense counsel's failure to take adequate steps to present a defense in that he failed to remain in contact with a material witness and he failed to make a timely request for a material witness order to insure her presence at trial.............................................................................24

B.  Counsel's failure to move pursuant to C.P.L. 670.10 for admission of  Ms. Boatwright's prior trial testimony or to make any challenge to the courts' rulings on this issue....................30

POINT III

The defendant is entitled to a reduction of the sentence in the interests of justice.............37

CONCLUSION...................................................................................................38

## STATEMENT OF FACTS

Mr. Edward's first trial began on May 23, 1994.  On June 3, 1994, the defense called Latavia Boatright.  She testified that on May 27, 1992 at approximately two o'clock, she was in her fourth floor apartment at 624 St. Johns Place. (T. 488, 492)  At that time, she was sitting on top of the radiator, looking out the fire escape window, heard gunshots and saw a man screaming and running behind cars.  She then saw him fall down in front of a car next to a vegetable stand across the street.  (T. 489-490, 514). She was able to observe the shooter's profile and estimated his height to be five foot six feet tall and shorter than the victim. (T. 488-490) She observed the shooter for approximately five seconds. (T. 511)   Following her testimony, the defendant was displayed for the jury. (T. 518)  After deliberations, the jury could not reach a unanimous verdict.

On the morning of October 14, 1994, the re-trial commenced with preliminary instructions by the Court.  The court informed the jurors that they would hear opening statements after the lunch recess.  After the jurors were excused, the court asked both counsel and the prosecution  whether they had any issues to raise prior to the recess. Both parties responded that they did not have any issues to raise.  (T. 18)

During opening statements, counsel for the defendant stated that the jury would "hear from an independent witness that will also tell you that she happened to be looking out the window when this incident occurred and the shooter that she saw was a short stocky man." (T. 25-26)

## Police Officer Robert McCarthy

. On May 27, 1992, at approximately 2:15 p.m., Officer McCarthy responded to a radio run of a male shot on St. John's and Franklin Avenue. (T. 29) As he approached the location, he observed a large crowd of approximately forty to fifty people. (T.30-31,62)  As they attempted to clear the crowd,

1

McCarthy noticed a male, face down on the street, who appeared not to be breathing. (T.31-32)  EMS members arrived just after McCarthy and turned the body over.  At that time, McCarthy observed a bullet wound in the individual's back. (T. 33) At 2:25 p.m., the EMS attendants pronounced him dead. (T. 34) Soon after, several uniformed and non-uniformed officers arrived; then McCarthy and other officers set up a crime scene.  This entailed cordoning-off an area in which evidence might be recovered, and keeping the crowd from the crime scene.  Up until that point, McCarthy did not question anyone in the crowd and no witnesses came forward. (T. 35, 68)  McCarthy's duty was to guard the four .45 caliber shell casings that he had observed from the opposite sidewalk of where the body was laying - near 760 Franklin Avenue.  (T. 37-38) McCarthy did not know whether the shell casings were moved after they were fired from the gun. (T. 67-68)  After crime scene officers arrived, McCarthy pointed out the location of the shells to them. (T. 38-39,56)  He also generally inquired of the crowd members whether or not anyone saw anything.  No one came forward. (T. 69)  At a later time, McCarthy identified the body to the medical examiners as that of Jerry Douglas. (T. 52)

**Detective Michael Sheptuk**

Detective Sheptuk, a member of the crime scene unit, testified to the general functions of the crime scene unit, such as conferring with detectives or uniformed officers to determine what occurred at the scene, taking photographs and drawing sketches of the area. (T. 76) Sheptuk testified that Detective Ward and Roucine were the detectives who responded to the scene, made a diagram and recovered four discharged shells. (T. 80, 82-23)  At the time of Sheptuk's testimony, Ward and Roucine were both retired. (T. 80)

**Detective Joseph Amato**

Detective Amato testified that at the time of his testimony, he was employed as a detective in the

2

ballistics squad of the police department. (T. 92) His duties included microscopic analysis of deformed bullets and shell casings, operability and identification testing of different types of firearms and cartridges. (T. 93) Amato testified that as a bullet passes through the barrel of a gun, it forms striations and grooves as a result of rifling that has been placed inside the barrel.  The striations and grooves enable a bullet to go straighter and further.  Each barrel has individual markings which form individual striations on a bullet. As a result, no two barrels are the same.  (T. 96-97)  Moreover, many other pieces of steel that comprise different parts of the gun (the breach-face, the firing pins, etc.) have unique markings or form unique markings on the gun.  (T. 98) The night prior to his testimony, Amato conducted a microscopic analysis of the four .45 caliber shell casings and determined that the four shells were fired from one gun. (T. 99-101) Amato also examined one .45 caliber lead bullet that was removed from by the medical examiner during the autopsy.  (T. 102) Amato testified that the markings of the rifling on the bullet were destroyed; therefore, the only way to determine whether that fifth bullet was fired from the same gun as the other four casings would have been to compare it with the weapon itself.  Without the weapon, such an analysis was impossible. (T. 102-104)

At the completion of this first day of testimony (Friday), in response to the court's inquiry, the People indicated that they would have five additional witnesses.  (T. 109-110)  The court asked counsel whether he would be putting on a case and counsel responded, "I may have one if not two witnesses." (T. 110)  The court directed that counsel have his witnesses in court on Monday so that summations and charge could take place on Tuesday morning.  (T. 110)  The court then asked counsel if he had any applications and he responded that he did not.  (T. 111)  Then the court stated, "I really mean it: Try to have your witnesses here Monday" and counsel stated, "I will make my best effort." (T. 111)


**Joseph F. Veress, M.D**

Dr. Veress, a city medical examiner at the Office of the Chief Medical Examiner, testified that his

duties included investigating and certifying the cause of death when death occurred under unusual circumstances.  (T. 122) Veress testified that on May 28, 1992, he performed an autopsy on Jerry Douglas. Both Officer McCarthy and an individual named Gilbert Maxwell made an identification of the body. (T. 125-126) Veress observed three gunshot wounds, one in the left buttock area, one in the left lower back area, and one in the left deltoid area (around the side of the upper left shoulder). (T. 127) The first (not in the order the wounds occurred – Veress testified that there is no way to scientifically determine the order of the wounds) bullet entered from the back, came toward the front and traveled downward.  This wound was not fatal and no bullet was recovered.  (T. 128-129) The second wound was surrounded by a rim of abrasion, lacerated the lumbar vertebrae, the lower pole of the left kidney, the left lobe of the liver, stomach, the left diaphragm, entered the chest cavity and perforated the pericardial sac, a membranous structure surrounding the heart. The bullet terminated by an exit site on the upper anterior chest wall on the left side.  (T. 130-131) No bullet was recovered.  The third wound was an entrance wound on the left upper arm, left deltoid area, then wen behind the head of the left humerus, then fractured the left scapula, entered the triangular supra-clavicular space, fractured the left clavicle, the left first rib, and lacerated the left subclavian artery.  The wound continued further from left to right, lacerating the esophagus, trachea, and the carotid artery.  There was a large-caliber deformed lead bullet in the supra clavicle space under the skin.  (T. 133) A significant amount of blood was observed to have been lost at the time of the examination. (T. 135) Veress opined that wound number two was compatible with the victim being shot in a hunched over position and the shooter was behind the victim.  (T. 140)  The third wound was consistent with the shooter being to the left of the body, facing the body's left side. (T. 143)  Veress also testified that wound two, itself, or wound three, itself, could have been fatal. (T. 146)   It was Veress' opinion that the cause of death was those two bullet wounds (T. 147) and that the firearm was beyond 18 to 24 inches from the body at the time the gun was fired. (T. 130)

Following Dr. Veress' testimony, Judge Rappaport directed counsel to have his witnesses present.

4

Counsel responded , "I haven't heard from my investigator as of yet." When the court suggested that counsel contact his investigator since he was going to charge the following day, counsel stated, "There is a witness out there." (T. 150).

## Troy Washington

Mr. Washington testified that at the time of his testimony, he knew Damien Edwards for about four or five years. They met while Mr. Washington was working under Mr. Edward's supervision in two grocery stores, both of which were owned by Mr. Edwards' uncle. He worked at the two locations for approximately two months in 1992, one located at St. John's and Franklin (the Aquarius grocery store) and the other at Montgomery and Nostrand. (T. 157-158)   The witness also knew Jerry Douglas from the neighborhood because he observed him delivering soda to certain stores in the neighborhood, including the Aquarius.  (T. 160) On May 27, 1992, he saw Damien Edwards, Jerry Douglas and approximately four or five other individuals in front of 760 Franklin Avenue, including a guy named Ivan, "the Pepsi guy", and two other workers; Damien and Jerry appeared to be having an argument. (T.161-163, 189, 191, 196) There was another individual with Mr. Washington named Phil. (T. 193) When Mr. Washington was approximately 23 or 24 feet from where Damien and Jerry were, Mr. Washington heard a shot go off; then he turned and saw Damien holding Jerry by the jacket and then Mr. Washington ran across the street. (T. 163, 196, 198-199) As he saw Damien grabbing Jerry by the jacket, Mr. Washington observed Mr. Edwards with a gun that he described as a black automatic. (T. 164-165)  As Mr. Douglas tried to pull away, two more shots went off.  Jerry then ran out into the street. (T. 200-201) Damien put the gun in his waistband, headed back toward the store and then Damien changed his mind and shot him again from five feet away, while Jerry was down on the ground. (T. 201) Mr. Washington observed Mr. Edwards run around St. John's on the opposite side of the block and then he heard a car skid off. (T. 202)  Mr. Washington did not come forward with information about the shooting in the moments after the incident,

5

but instead called a Detective Michael Paul and reported the incident at a later time. (T. 176-177, 183-185) While Mr. Washington testified that he did not know Detective Paul before that night, Mr. Washington admitted that he had previously testified that he did know him. (T. 208-209) After the incident, at approximately 2:30 or 3:00 p.m., there was a detective present who was showing money to the crowd. (T. 185-187). Mr. Washington remained at the scene for approximately two hours.

After Mr. Washington completed his testimony, Judge Rappaport again stated that there was a possibility that summations and charge could be held on the following day. The Court then asked counsel whether he had any applications. Defense counsel replied that he did not.

**Aulander Askew**

Mr. Askew stated that during the last twenty years, he had been a truck driver and a route salesman for Pepsi Cola. His route included Franklin Avenue. (T. 219) At the time of the shooting, Jerry Douglas was working with him, assisting him in removing beverages off of the truck and delivering them to stores. (T. 219-220) Upon arriving at 760 Franklin Avenue, Mr. Askew went to a counter inside the store (about halfway) and received an order from someone. He then went to unload the items from the truck with Jerry Douglas. Mr. Askew put the items by the basement which was to the left of the front of the store. (T. 222) Then Mr. Askew went inside of the store, had someone from the store come outside to check that the order was correct and then he returned inside in order to get paid. While Mr. Askew did this, Jerry Douglas remained outside of the store. (T. 223-224) Mr. Askew observed that Mr. Douglas was talking to some guys outside of the store but he did not recognize them. (T. 224) As Mr. Askew was leaving the store to return to the truck, he heard shots go off. In response to hearing the shots, he jumped back into the store. He got within a few feet of the door. (T. 225-226) When things quieted down, he left the store and observed a crowd around. He observed Jerry Douglas' body on the ground. (T. 228) On cross

6

examination, Mr. Askew was asked whether he left the scene just after the shooting, returning to his route

and caused the police to track him down at his next stop.  Askew denied that he did this and was then

confronted with his prior statements in which he stated that he did.  (T. 232-233) Mr. Askew testified that

he informed Detective Kern that something had previously happened between Jerry Douglas and another

individual.  (T.249-250)


**Agent Brenda Heck**

     Agent Heck was employed by the Federal Bureau of Investigation in the New York Police

Department Fugitive Task Force. (T. 253) She was assigned to investigate a warrant that was issued for

the defendant as there were murder charges pending against him.  The agent testified that she had

information that Mr. Edwards was in Trinidad. (T. 254)  In November of 1992, she received information

that Mr. Edwards had gone to the United States embassy in Trinidad and applied for a visa to travel back

into the United States.  (T. 255) The address listed 760 Franklin Avenue in Brooklyn as his home address.

(T. 256).  The agent requested a stop notice, a notice to border agents to detain an individual upon their

entry into the United States.  (T. 257) Damien Edwards was detained at JFK Airport on November 26,

1992.  (T. 258)  Mr. Edward's passport was received in evidence.  The passport indicated that Mr.

Edwards returned to Trinidad on May 29, 1992  (T. 261-2) and that the passport was issued on April 30,

1992 in New York.  It was established through this witness that since Trinidad and the United States do not

share an extradition agreement, Mr. Edwards could have remained in Trinidad and the United States would

have been unable to bring him back here for the purposes of prosecution.  (T. 270-271).


**Detective Joseph Pagnello**

     In 1992, this detective was assigned to the warrant squad as part of the Joint Task Force with the

NYPD and the FBI to return persons on warrants back to the issuing courts. (T. 281)   At 2:00 a.m. on

November 27, 1992, he received a page alerting him to respond to Kennedy Airport where Damien

Edwards was being detained with INS as a result of a warrant.  (T. 281-282) He took Mr. Edwards into

custody on the warrant. (T. 283)


**Renee Solomon**

This witness was the wife of Jerry Douglas.  They were together for seven years and had two

children together. (T. 294) She received a call at approximately 2:30 p.m. from Mr. Douglas' best friend's

wife informing her that he was dead.   She went to the location of where he was shot and observed him

laying in the street.  (T. 297) The following day Ms. Solomon went to Kings County Hospital and identified

his body. (T. 298)

The People rested.

The Court directed counsel to call his first witness and counsel requested an adjournment to the

following day.   The Court advised counsel that even though he had five months to have his witnesses

available, (the first trial occurred in May of that year) he would give him until the following morning to be

ready to proceed.   The Court asked counsel if he needed any help in getting the witnesses.  After counsel

was provided with Ivan Quevas' (a prosecution witness who had been called at the first trial) address and

phone number, counsel did not request anything additional.  (T. 301-302) On the following day, counsel

informed the court that it was his belief that his investigator had been "in contact" with Ms. Bowright but

could not provide the court with specifics as to her whereabout.  He asked for a continuance to locate this

witness.  (T. 310-313) Then there was a lengthy discussion on the record about whether any efforts were

made by counsel to contact this witness.  It was made clear that a week earlier, the District Attorney

apprized counsel that the witness had moved but that her beeper number had remained the same. (T. 313-

317) The judge then paged the witness to the courtroom.  (T. 318)   At that point, the judge raised the issue

of having her testimony read into the record but there was no resolution or argument.  (T. 318-319) The

8

court then received a phone call in response to the page and spoke to the witness' paramour. This individual informed the court that he was not aware as to her whereabouts and that he had not seen her in a month and a half. (T. 321) However, the defendant's investigator arrived later in the day and informed the court that he had made some arrangements to meet with the witness. (T. 340) The court granted the continuance and sua sponte granted a hearing to determine whether the witness' prior testimony would be read. The court's inclination at that time was that if the witness could not be found, he would have her prior testimony read. (T. 343) On the day that the hearing was to be held, counsel informed the court that the witness was not present and the court adjourned the matter to the following Monday. The hearing was not held and there were no applications made by counsel. (T. 356) The court commented that it was his belief that the witness was not unavailable and that the defendant could not prevail at a hearing to grant the reading of prior testimony. Counsel had not comment or application at that juncture. (T. 357-358) On the following Monday, the witness was not present. Counsel made an application for a material witness order which was denied. It became clear through the Court's summary of the events in relation to this witness that a subpoena was served on the witness on the previous Wednesday for her appearance on Thursday. She did not appear on Thursday. (T. 359-363) The court denied the application and the attorneys summed up. (T. 365)

9

<u>ARGUMENT</u>
<u>POINT I</u>

<u>The Defendant was denied a fair trial in that he was deprived of an opportunity to present a defense:
the court failed to grant an application for a material witness order and failed to admit the prior
testimony of a material witness into evidence.</u>

One of the "minimum essentials of a fair trial" is the right to present a defense (<u>Chambers v.
Mississippi</u>, 410 U.S.284, 294, 93 S. Ct. 1038, 1045, 35 L. Ed.2d 297; <u>Rosario v. Kuhlman</u>, 839 F.2d
918, 924 (2d. Cir.)).  This right is derived from both the due process clause of the Fourteenth Amendment of
the United States Constitution and Article 1, Section 6 of the New York State Constitution and the
compulsory process clause of the Sixth Amendment of the United States Constitution, and provides the
accused with the means to present his version of the facts to the trial jury.  It is a fundamental right which
enables an accused to present witnesses in his own defense in order for the jury to determine the truth (see,
<u>Chambers v. Mississippi</u>, supra, 410 U.S. at 302, 93 S.Ct. at 1049; <u>Webb v. Texas</u>, 409 U.S. 95, 93
S.Ct. 351, 34 L.Ed.2d 330; <u>Washington v. Texas</u>, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d
1019; <u>Rosario v. Kuhlman</u>, supra,  <u>People v. Chipp</u>, 75 N.Y.2d 327, 336, 553 N.Y.S.2d 72, 552 N.E.2d
608.)  The court failed to ensure this right to Mr. Edwards.  The jury was not permitted to hear his defense
through the testimony of a material witness, Ms. (Sharon) Lactonia Boatwright, or through the admission of
her prior trial testimony.

As is clear from the statement of facts, during Mr. Edward's first trial, a witness by the name of
Ms. Boatright testified on the defendant's behalf.  In sum, she told the jury that she was present during the
shooting, was able to observe the shooter and described him as being five foot six feet tall and shorter than
the victim.  (T. 492 - 494).  Mr. Edwards was displayed to the jury and it was argued during summation that
the shooter could not have been Mr. Edwards because of the significant discrepancy in the height of the
shooter as described by Ms. Boatright and Mr. Edward's actual height.  (T. 535, 539-540).

10

During the second trial, as a result of the events outlined below, the defendant was unable to call this witness. On Monday, October 17, 1994, the People rested, and defense counsel requested an adjournment until the following day, Tuesday, October 18, 1994, in order to secure the presence of Ms. Boatwright. (T. 301-302)  On the following day, the court received contradictory information about the witness' whereabouts[1], but accepted the word of the defense investigator that he had made arrangements that might have resulted in a meeting with the witness. (T. 341) The court granted a continuance until Thursday and sua sponte ordered a hearing regarding the admissibility of Ms. Boatwright's prior trial testimony. While the record is bereft as to the facts contemporaneous with their occurrence, it was later revealed that a subpoena was served on Ms. Boatwright by the People on Wednesday, October 18, 1994 for her appearance in court on Thursday, October 19, 1994. She failed to appear on Thursday[2] and the case was adjourned until Monday, October 23, 1994. On Monday, the court denied defense counsel's application for a material witness order and ordered the parties to begin summations. (T. 359-365).

The court had two opportunities to ensure that Mr. Edwards received a fair trial; at each opportunity, the court stymied the defense from presenting its version of the facts. First, the court should have granted defense counsel's application for a material witness order. The granting of this order would have accomplished one of two results: (a) the witness would have been brought before the court as a result of the material witness order and testified on the defendant's behalf; or (b) the defendant could have successfully challenged the court's determination that Ms. Boatwright's testimony was not admissible under

---

[1]The court was provided with a pager number for the witness and paged her during the proceedings. Ms. Boatwright's paramour responded to the page and informed the court that he was not aware of Ms. Boatwright's whereabouts. Later, the defense investigator, Mr. William Sewell, appeared in court and told the court that he had also made contact with this same individual and that for some consideration, they would meet and the investigator would be provided with a contact number for Ms. Boatwright. (T. 312-340)

[2]The hearing that the court ordered for that day was never held. This will be discussed in Point B.

11

C.P.L. 670.10 (finding that the defense had failed to exercised due diligence in locating her), and, as such, Ms. Boatwright's prior trial testimony would have been read to the jury.  Second, the court should have admitted Ms. Boatwright's prior trial testimony into evidence pursuant to C.P.L. Section 670.10.  The court should have found that the witness was unavailable: since the witness was located, served with a subpoena and failed to respond to the subpoena, she was unavailable to testify.   Then, her prior trial testimony would have been read to the jury.

The court's failure to grant either application denied the defendant his right to present a defense. His inability to present the facts from his viewpoint violated his rights derived from both the due process clause of the Fourteenth Amendment of the United States Constitution and Article 1, Section 6 of the New York State Constitution and the compulsory process clause of the Sixth Amendment of the United States Constitution.

### a. The Court denied counsel's application for a material witness order.

Criminal Procedure Law Section 620.20 specifically designates when a material witness order is authorized.  Clearly, it states that a material witness order may be issued upon the ground that there is reasonable cause to believe that a person who the People or the defendant desire to call as a witness in a pending criminal action: (a) possess information material to the determination of such action; and (b) will not be amenable or responsive to a subpoena at a time when his attendance will be sought.  **C.P.L. Section 620.20**.

The court erred in failing to grant defense counsel's application for a material witness order.  The defense clearly satisfied both prongs of Section 620.20 of the Penal Law.  Ms. Boatwright possessed information material to the determination of the action.  She was present during the incident, she observed the shooting and was able to describe the perpetrator of the crime.  While the trial court commented as to the

manner in which it (the court) would have presented the defense had it (the court) been trial counsel, this does not alter the materiality of the content of her testimony.  In <u>People v. Reid</u>, 156 A.D.2d 488, 548 N.Y.S.2d 769, the court refused to sign a material witness order for a witness who was also a co-defendant.  The court found that the evidence of guilt was overwhelming, and that there was no reasonable possibility that the proffered testimony of the co-defendant, a long-time friend of the defendant, would have resulted in a verdict more favorable to the defendant.[3]  Unlike <u>Reid</u>, in the case at bar, if the jury believed the testimony of Ms. Boatwright, there was a strong likelihood that the jury would have found Mr. Edwards not guilty.  After all, there was only one prosecution witness who identified Mr. Edwards as the shooter. Ms. Boatwright was a independent witness, one who had no motive to lie on Mr. Edward's behalf.  Her testimony would have called Mr. Washington's testimony into question and would have raised a reasonable doubt as to the defendant's guilt.

Moreover, the second prong of C.P.L. 620.20 is also satisfied.  It is clear from the record that though Ms. Boatwright's whereabouts were unclear on Monday, October 17, 1994 and Tuesday, October 18, 1994, on Wednesday, October 19, 1994, Ms. Boatright was served with a subpoena by the People.[4]  She was to respond and appear in court on Thursday, October 20, 1994, and she failed to do so.  Thus, she was not amendable or responsive to the subpoena at the time her presence was sought.  **C.P.L. Section 620.20(b).**

It is clear from the record that the court's reasoning for failing to sign the material witness order

---

[3]While the court also commented on defense counsel's failure to apply "in writing and subscribed and sworn to by the applicant", this was not the sole reason for the court's refusal to sign the order.

[4]The subpoena was served by the People and not by the defense.  However, for the purposes of C.P.L. 620.20, there is no requirement that the witness be served by a particular party.  As such, the defendant's failure to serve the subpoena cannot be a grounds for the court's failure to sign the order.  Certainly, this reasoning was **not** considered by the court.

13

was that "it should have been asked for last week." (T. 364) The court also suggested that defense counsel was only looking to "buy time" and not find the witness. (T.364). There is no evidence in the record that defense counsel was hoping to buy time. The only additional evidence that defense counsel contemplated offering was the testimony of Ms. Boatwright. Furthermore, defense counsel had already prepared and tried this case once before. Certainly he was not hoping to gain additional time to prepare summations or set forth additional evidence.

Moreover, the court placed on the record the fact that the defense investigator informed the court on Thursday, October 20, 1994, (the date that the witness was ordered to appear via subpoena) that he was assured by the witness that she would appear on Monday. Defense counsel relied on the witness' pledge to appear in court on Monday, even though she failed to respond to the subpoena. (T. 363-365) Though the court clearly wished to expedite the process, it was not clear until Monday, October 24, 1994, that the witness was not, in fact, amenable to the subpoena. An application on Thursday, based on the witness' assurance, might have been deemed premature.

The only basis for denial of any application for a material witness order is failure of the party requesting the order to satisfy C.P.L. 620.20(a) or (b) or both. For example, in People v. Hales, 227 A.D.2d 896, 644 N.Y.S.2d 450, the court rejected the contention that the court erred in failing to grant defendant's application for a material witness order because the defendant failed to demonstrate that the witness was not amendable to a subpoena. (See C.P.L. 620.20(1)(b); 620.30(1); People v. Anderson, 168 A.D.2d 360, 562 N.Y.S.2d 684, lv. denied, 78 N.Y.2d 953, 573 N.Y.S.2d 649, 578 N.E.2d 447.) Further, in People v. Irick, 145 A.D.2d 507, 535 N.Y.S.2d 446, the court held that the lower court did not abuse its discretion in denying the defendant's motion for a material witness order, since he failed to establish the materiality of the proposed witness's testimony. (See People v. Van Skiver, 111 A.D.2d 1032, 491 N.Y.S.2d 191.) Finally, in Anderson, the Appellate Division affirmed the trial court's denial of

14

defendant's application for a material witness order on the grounds that the witness possessed material

testimony or was not amenable to subpoena.

In fact, it is clear that inconvenience to the court is not a basis for denial of an application for a

material witness order.  In **People v. Foy**, 32 N.Y.2d 473, 299 N.E.2d 64, 346 N.Y.S.2d 245 defense

counsel advised the prosecutor that he intended to produce an alibi witness at trial and opened on this as his

defense.  When the People finally rested, defense counsel applied to the court for an adjournment in order to

secure the presence of two witnesses.  The application was denied by the Trial Judge because  he had been

assigned to preside in Staten Island on the following Monday and  the trial had to conclude in time for the

court to assume that assignment.  The court held that since the witness had been in court and was in the

jurisdiction, a request for a short adjournment after a showing of some diligence and good faith should not

be denied merely because of possible inconvenience to the court or others, particularly when denial of the

motion would not only deprive the defendant of the right to present witnesses in his defense, but would in

fact effectively deprive him of the defense itself and case doubt upon his credibility.   A new trial was

ordered.

The Court of Appeals in **People v. Singleton**, 41 N.Y.2d 402, 361 N.E.2d 1003, 393 N.Y.S.2d

353, held that the trial court did not abuse its discretion in refusing to grant the defendant a fourth

adjournment to secure the presence of a vital witness.  Two potential witnesses who had been arrested with

the defendant were subpoenaed by the defense for appearance but failed to appear in court.  The Trial Court

granted the defendant a 24-hour adjournment in order to bring his two witnesses to court.  When one of the

witnesses failed to appear, the court granted a second adjournment, directing that material witness orders be

served on the witnesses.   One of the witnesses was detained and then released by mistake.  After learning of

the error, the court gave the defendant until that afternoon to secure the witness.  When the defendant failed

to produce the witness, the court denied a request for a fourth adjournment.  The court distinguished these

facts from **Foy** in several ways.  The court held that the trial court had been accommodating to the defense

15

by granting several adjournments, there was some doubt as to the needfulness of the witness' testimony and the defendant had absconded and brought about his own difficulties in not being able to locate the witnesses at the time of the delayed trial.

While the court in the case at bar was patient and did grant several adjournments for the defense to produce this witness, unlike in **Singleton**, supra, there is no doubt this witness' testimony was necessary. Furthermore, the difficulty in locating this witness was in no way attributable to the defendant. Also, the court's denial of the request was based on the court's sense of when the request should have been made and not a finding pursuant to C.P.L. to 620.20. As such, the court abused its discretion in failing to grant defense counsel's request for a material witness order.

**b.  The Court failed to admit prior testimony of a material witness into evidence pursuant to C.P.L. 670.10.**

A defendant's constitutional right to present a defense requires that such testimony be introduced, even though it is hearsay, and even though no exceptions to the hearsay rule are otherwise applicable. The right to present a defense "comprehends more than the right to present the direct testimony of live witnesses, and includes the right under certain circumstances, to place before the jury secondary forms of evidence, such as hearsay or ... prior testimony". **Rosario v. Kuhlman**, supra. C.P.L. 670.10 provides certain limited exceptions to the rule prohibiting the introduction of prior testimony, otherwise classifiable as hearsay, by either the prosecution or the defense at a criminal trial. The statute permits the introduction of testimony given by a witness at (a) a trial of an accusatory instrument, or (b) a hearing upon a felony complaint conducted pursuant to section 180.60, or (c) an examination of such witness conditionally, conducted pursuant to article six hundred sixty, may, where otherwise admissible, be received into evidence at a subsequent proceeding in or relating to the action involved when at the time of such subsequent proceeding the witness is unable to attend the same by reason of death, illness or incapacity or cannot with

16

due diligence be found, or is outside the state or in federal custody and cannot with due diligence be brought before the court".   **C.P.L. Section 670.10**.

A defendant may introduce secondary forms of evidence in his defense if the evidence is material to the defense (**People v. Agurs**, 427 U.S. 97, 112, 113, 96 S.Ct. 2392, 2401, 2402, 49 L.Ed.2d 342), the evidence bears sufficient indicia of reliability (**Ohio v. Roberts**, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597), and the defendant establishes that the testifying witness is no longer available (**Rosario v. Kuhlman**, 839 F.2d 918, 924 supra).  **People v. Phan**, 150 Misc.2d 435, 568 N.Y.S.2d 498.

As set forth in the statement of facts, during Mr. Edward's first trial, Ms. Boatwright testified that on May 27, 1992 at approximately two o'clock, she was in her fourth floor apartment at 624 St. Johns Place. (T1. 484, 488)  At that time, she was sitting on top of the radiator, looking out the fire escape window, heard gunshots and saw a man screaming and running behind cars.  She then saw him fall down in front of a car next to a vegetable stand across the street.  (T1. 485-486, 510). She was able to observe the shooter's profile and estimated his height to be five foot six feet tall and shorter than the victim. (T1. 488-490) She observed the shooter for approximately five seconds. (T1. 507)  Following her testimony, the defendant was displayed for the jury. (T1. 514)  After deliberations, the jury could not reach a unanimous verdict.

It is clear that defense counsel failed to make a record challenging the court's determination of this issue.  It is well established that absence of protest or objection at trial ordinarily precludes appellate review of any alleged error.  It is equally clear that the Appellate Division possesses power, to be exercised in its sole discretion, to consider any error in criminal proceedings even though no protest was registered at trial, and such discretion may be exercised in the interest of justice when the error presented is so serious that it deprived the defendant of a fair trial.   C.P.L. 470.15(6)(a); **Brown v. Reid**, 493 F.Supp. 101, D.C.N.Y 1980.  The result of the defendant's failure to challenge the court's determination of this issue was so

serious that it deprived the defendant of a fair trial. He was deprived of the right to put forth a defense at trial. As such, the defendant respectfully requests that this court consider this issue in the interest of justice.

In order to determine whether this evidence presented as testimony at the first trial should have been admitted during the second, the court must determine whether C.P.L. 670.10 was satisfied. The first issue the court must determine is whether that evidence was material to the defense. Certainly, Ms. Boatwright was present during the incident. She observed the shooting and was able to provide direct evidence consistent with reasonable doubt of the defendant's guilt. One standard set forth to determine whether the evidence is material to the defense is if, after viewing the record in its entirety, the "evidence creates a reasonable doubt that did not otherwise exist" (United States v. Agurs, supra, 427 U.S. at 112, 96 S.Ct. at 2402). In People v. Legrande, 176 A.D.2d 351, 574 N.Y.S.2d 780, the trial court refused to receive into evidence the prior trial testimony of an alibi witness who was out of State. The appellate division reversed, holding that the witness' testimony was material and favorable to the defendant since it established his whereabouts at the time the crime occurred. As such, it was central to the defense and could have resulted in a different verdict. Ms. Boatwright set forth evidence that created doubt as to the perpetrator's identification. Her testimony established that the perpetrator was significantly shorter than the defendant and it was central to the defense which was that the wrong man was being prosecuted. Her testimony created a reasonable doubt that did not otherwise exist and it could have resulted in a different verdict. Even the trial court commented, "This case is a completely different case without this witness' testimony." (T. 350)

Secondary forms of evidence, such as Grand Jury testimony, bear sufficient indicia of reliability "where the same party has had a full and fair opportunity to cross-examine the witness". (Rosario v. Kuhlman, 839 F.2d 918, 924, supra.) The testimony in question in the case at bar is trial testimony from the prior trial. Ms. Boatwright was cross-examined during that trial. In fact, the same prosecutors that

18

prosecuted Mr. Edwards in this case handled the first trial. They had a full and fair opportunity to cross-examine Ms. Boatwright.

Finally, a party seeking the introduction of hearsay, i.e., prior testimony or statements of a witness not present at the trial to testify, must show that a good-faith effort was made to obtain that witness's presence at the trial, and that the witness could not, with due diligence, be found. (**Ohio v. Roberts**, 448 U.S. 56, 74, 100 S.Ct. 2531, 2543; see, **Barber v. Page**, 390 U.S. 719, 724-725, 88 S.Ct. 1318, 1321-1322, 20 L.Ed.2d 255; **People v. Arroyo**, 54 N.Y.2d 567, 571, 446 N.Y.S.2d 910, 431 N.Y.S.2d 271, cert. denied 456 U.S. 979, 102 S.Ct. 2248, 72 L.Ed.2d 855; **Rosario v. Kuhlman**, 839 F.2d 918, 924-925, supra.) The extent to which the party seeking to introduce the hearsay must go in order to satisfy the good faith and due diligence requirements is a question of reasonableness (**Ohio v. Roberts**, supra, 448 U.S. at 74, 100 S.Ct. at 2543; **California v. Green**, 399 U.S. 149, 189, n. 22, 26 L.Ed.2d 489 [Harlan, J. concurring]).

It is clear that defense counsel had engaged the active participation of a private investigator by the name of William A. Sewell to assist in locating Ms. Boatwright. Defense counsel represented that between the first trial and the second, the investigator had been in contact with the witness, that she was available and would come in to testify. (T. 312, 316) The investigator appeared in court and spoke on the record, as well, as to his efforts to locate the witness. He told the court that he had been looking for her over the course of the last ten days. (T. 337) He further indicated that he had a conversation with Ms. Boatwright's paramour who had agreed to meet with the investigator and provide him with a phone number for Ms. Boatwright. (T. 340-341) Following this discussion, the court adjourned the case until Thursday (two days later) to determine whether the witness had been located and if not, to conduct a hearing to determine whether or not the criteria of Section 670.10 of the C.P.L had been satisfied. (T. 341) The court urged the defense (particularly the investigator) to exercise due diligence in locating the witness, as the court believed

that "in the interests of justice this testimony is essential testimony and it shouldn't be denied to the defendant." (T. 342)

On Thursday, the record suggests that the defendant was still having difficulty in securing the presence of the witness, yet the reason was not made clear. (T. 353)  Furthermore, the record is bare of any specifics as to the efforts made since Tuesday to secure the presence of the witness.  Instead, the court assumed (without conducting a hearing) that the witness was not unavailable pursuant to C.P.L. Section 670.  This assumption was made despite the fact that on the previous day, Wednesday, the witness was found and served with a subpoena to appear in court on Thursday.  (T. 363) Though the witness was served with a subpoena, she failed to comply with its order to appear.

While it may be argued that defense counsel exerted little effort to maintain contact with the witness prior to the commencement of the trial and during the two days that it took to put on the People's case, once defense counsel took the initial steps to locate the witness, the defendant did everything in his power to apprise the court of the steps taken to locate the witness.  An investigator was in contact with the one person who knew where to find the witness and a subpoena was served upon the witness.  Her whereabouts were discovered but it was clear that the witness had no intention of complying with the subpoena.  In **People v. Legrande**, supra, 574 N.Y.S.2d at 782, the court held that the witnesses' misrepresentations to defense counsel as to the reasons for his absence were not the fault of the defense.  Since the defendant did everything in his power to keep the court apprised of the whereabouts of the witness and to secure the witness in court at a future date, the defendant exercised due diligence in his attempts to bring the witness before the court.[5]

---

[5] In **People v. Phan**, 150 Misc.2d 435, 568 N.Y.S.2d 498, the trial court found that the defendant made efforts to find the alibi witness who had testified in the grand jury but failed to meet the good faith/due diligence standard necessary to find the witness unavailable.  This case can be distinguished from the case at bar.  In **Phan**, the defendant failed to follow up on their efforts beyond the serving of subpoenas of witnesses that might have been able to contact the

Unavailability must be established in order to satisfy the court that the defendant's failure to produce her was not due to indifference or a strategic preference for presenting her testimony in the more sheltered setting of her minutes as opposed to the confrontational setting of a personal appearance on the stand. **People v. Arroyo**, 54 N.Y.2d 567, 446 N.Y.S.2d 910, 431 N.E.2d 271, cert. denied 456 U.S. 979, 102 S.Ct. 2248, 72 L.Ed.2d 855. It is clear that the defendant wanted this witness to be produced. Her testimony was the basis for Mr. Edwards' defense. Furthermore, there could be no strategic preference inferred from his failure to bring forth the witness, as the witness had been subject to cross-examination at a trial and not a preliminary hearing, like in **Arroyo**. She was examined before a jury, in fact, by the same prosecutors that were prosecuting the case during this second trial. Therefore, any concern that defense counsel's failure to produce the witness was a result of a strategic preference is unwarranted.

Ms. Boatwright's failure to comply with the court's subpoena suggests that she was absenting herself in order to avoid testifying. Once it became clear that the attempts to locate her were successful and that she, nonetheless, did not come forward, the court should have concluded that the defendant had exercised due diligence and that her unavailability was established, thus paving the way for admission of Ms. Boatwright's prior trial testimony into evidence. **People v. Nucci**, 162 A.D.2d 725, 557 N.Y.S.2d 422.

Moreover, once defense counsel became convinced that the witness refused to comply with the court's order to appear[6], counsel requested that the court sign a material witness order to secure the witness' presence. The court refused. (T. 359-365) The court's refusal to sign this order impeded counsel's ability to complete due diligence efforts. In **People v. Robinson**, 224 A.D.2d 1001, 637 N.Y.S.2d 549, the

_____

witness and the ringing of doorbells and visiting neighbors. In the case at bar, not only was the witness located, but she was served with a subpoena.

[6]Though the subpoena was served on Wednesday and the witness was to appear in court on Thursday, the investigator was under the false impression that she would appear on Monday. Defense counsel was not convinced, until Monday when she failed to appear, that the witness was not willing to comply with the subpoena.

21

POINT II

**Petitioner Was Denied The Effective Assistance Of Counsel**

The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial through largely through the provisions of the Sixth Amendment. **Strickland v. Washington**, 466 U.S. 668, 684, 104 S.Ct. 2052, 2062, 80 L.Ed.2d 674 (1984). The Sixth Amendment to the United States Constitution provides that "in all criminal prosecutions, the accused shall enjoy the right...to have the assistance of counsel." The right to counsel protected by the Sixth Amendment "is the right to the effective assistance of counsel." **McMann v. Richardson**, 397 U.S. 759, n. 14 (1970). The United States Supreme Court has established a two-prong test to be applied in assessing claims of ineffectiveness of trial counsel. New York State has embraced the **Strickland** analysis on claims of ineffective assistance of counsel. See **People v. Sullivan**, 153 A.D.2d 223 (2d Dept. 1990). The New York Court of Appeals has held that where the evidence, the law and the circumstances of a particular case, viewed in totality and as of the time of representation, reveal that the attorney did not provide meaningful representation, the constitutional right of effective assistance of counsel will have been violated. **People v. Baldi**, 54 N.Y.2d 137 (1981). The court's most critical concern was to avoid confusing true ineffectiveness with mere losing tactics and according undue significance to retrospective analysis. **Id** at 147. See also, **People v. Sullivan**, supra, at 227.

To be sure, there is no "litmus test" for "inadequate" or "ineffective" legal representation. **People v. Ellis**, 81 N.Y.2d 854 (1993). There is, however, a strong presumption of effective assistance of counsel. **People v. Finch**, 199 A.D.2d 278 (2d Dept. 1993). While a criminal defense attorney must zealously represent the client within the confines of the law, counsel's obligation to pursue a particular contention or defense assumes that the claim or defense be colorable. **People v. DeFrietas**, 213 A.D.2d 96 (2d Dept. 1995). Therefore, the burden of demonstrating ineffective assistance of counsel rests with the defendant.

23

People v. Garcia, 75 N.Y.2d 973 (1996) (a defendant must show the absence of strategic or other legitimate explanation for counsel's ineffectiveness.)  The Baldi case, supra, made clear that trial tactics which terminate unsuccessfully do not automatically indicate ineffectiveness.  Instead, the court must determine whether counsel was truly ineffective or if the strategic choice he made were merely unsuccessful.  Baldi, supra, at 147.  It is respectfully submitted that counsel's conduct in the case at bar was woefully ineffective and that as a result thereof, petitioner was deprived of a fair trial.

### a.  Counsel failed to take adequate steps to present a defense in this matter, such as he failed to remain in contact with a material witness and he failed to make a timely request for a material witness order to insure her presence at trial.

There can be no question that defense counsel intended to call Latavia Boatwright as a defense witness.  His opening statement included a reference to "an independent witness that will also tell you that she happened to be looking out the window when this incident occurred and the shooter that she saw was a short stocky man." (T. 25-26)  This description summarizes Ms. Boatwright's testimony from the earlier trial.  (T1. 484-514).  After the completion of the first day of testimony (Friday), the court began asking counsel questions as to whether he would be putting on a case.  In response to counsel's affirmative response, the court told counsel to have his witnesses present on Monday and stated an intention to conduct summations and charge to the jury on Tuesday.  (T. 110-111)  While the court indicated his intention to have the case move along at a brisk pace, defense counsel failed to indicate any problem in contacting his witness until after the first witness testified on Monday.  Following Dr. Veress' testimony, Judge Rappaport directed counsel to have his witnesses present and counsel stated, "I haven't heard from my investigator as of yet."  When the court suggested that counsel contact his investigator as he intended to charge the following day, counsel stated, "There is a witness out there." (T. 150)  However, nothing additional was discussed or resolved.

After Mr. Washington completed his testimony, Judge Rappaport again stated that his plan was to

conduct summations and charge on the following day.  Counsel said nothing at that time regarding his difficulties in locating Ms. Boatwright.  (T. 29 ).  The issue of the defense case was not raised again until after the People rested.  (T. 298)  The Court directed counsel to call his first witness and defense counsel immediately requested an adjournment.  Though the court disparaged counsel for failing to have his witness available even though five months had transpired since the first trial, the court granted counsel's application until the following day.  (T. 301-302)

At that time, defense counsel again requested a continuance in order to locate Ms. Boatwright, stating that was his belief that his investigator had been "in contact" with Ms. Boatwright.

Mr. Stutman: My investigator told me he had been in contact with her.  The case was moved into the TAP part.  He felt confident —

The Court: What do you mean "in contact?"  What does that mean?

Mr. Stutman: Again, I'm not specifically sure.  I'd ask the court to indulge me.  He's on his way.  Perhaps the court could inquire of the investigator.  I don't want to misstate any facts at this point in time.

The Court: I don't understand what that means.  You didn't speak to your investigator –

Mr. Stutman: Yes.

The Court: – about the availability of this witness.

Mr. Stutman: You're asking me specific questions as to dates.

The Court: I didn't ask you anything.  All I asked you, what did you mean he was in contact.  Obviously, you don't have he was witness. (SIC) (T. 312-313)

The court continued to ask questions of counsel regarding when the case was last on before it was sent to the trial part and counsel's awareness of the necessity to produce this witness.  (T. 313-314).  Finally, the court asked:

The Court: What about this witness?  Who did anything between the time it went to TAP and the time it got to me to have this witness available?

Mr. Stutman: Again, I'll have to check with my investigator.  (T. 316)

25

It is clear that counsel had not been in contact with Ms. Boatwright at all since the last trial, five months earlier.  It is equally clear that counsel had not been sufficiently in contact with the investigator to report the progress or lack thereof in locating this witness.

The Court: Well, what did you do? You knew you needed this witness.  You answered ready.  It would seem to me such an essential witness you're talking about, who said someone else committed the crime, you must have had some handle if you answered ready.

Mr. Stutman: He indicated to me he had been in contact with her and she was available and would come forward to testify.

The Court: When did he last indicate that to you?  You got a written report from this detective?

Mr. Stutman: No, Judge.

The Court: When did he last tell you that this witness was available?

Mr. Stutman: I'm trying to recollect. (T. 316)

Later the court asked counsel whether he attempted to reach out to the witness with the beeper number that the People provided to defense counsel.  Mr. Stutman again stated that calling her was in his investigator's hands. (T. 317) The Court chided counsel:

The Court: I'll call her. What's going on? This is the way you're looking for her?  Were you told by the assistant district attorney that she had moved from her address and her mother no longer lived –

Mr. Stutman: I think only when we started trial –

The Court: That was last week.  What did you do about that?

Mr. Stutman: I gave that information to my investigator.

The Court: That's good information; it shows that she's completely among the missing.  What did he do to find her?  Because if he sat on an address that you were told she no longer lived in, he could have sat there the rest of his life.

Mr. Stutman: I can't answer the question.  He's –  (T. 317-318)

The Court then paged the witness.  (T. 318)  A male responded, the father of Ms. Boatwright's child.  He told the Court that he did not know where Ms. Boatwright was and that he had not seen her in a

26

month and a half. (T. 320-321) The court reminded counsel that throughout the trial the court continually

advised counsel to have his witnesses available. The court also berated counsel for his failure to take steps

to determine the whereabouts of the witness:

> If you want to make this application and you have no facts to
> make this application – the only way you can get a continuance is if
> there's some reasonable opportunity to find the witness. But just to go
> over for a day – you don't have the slightest idea where the witness is, and
> no one has done anything to find that witness. It wouldn't serve this
> Court system at all. I mean, there has to be some reasonable belief that if
> I gave you the day you'd find the witness, and what disturbs me is that if
> you really had worked on looking for the witness, we may have been able
> to hold a hearing to determine whether or not I would permit the reading
> of the testimony. It's not as if we don't have testimony. You follow me?
> An investigation could have gone towards that end, as well as finding the
> witness. Something else that really disturbs me, there seems some
> reluctance on this witness' behalf, and you've never made an application
> to this Court in this trial for a material witness order. (T. 326-327)

Finally, Mr. Stutman did acknowledge that he had not spoken with Ms. Boatwright at all since the

last trial (T. 328)

The investigator, William A. Sewell, answered questions put to him by the court regarding his

activities. He told the court that he was unable to locate the witness, thus far. (T. 337) The court asked

the investigator a series of questions regarding his activities involved in attempting to locate the witness.

While he had only gone to Ms. Boatwright's old address, he attempted to locate her mother. However, he

only learned on the previous day that she had moved and had done nothing else to locate her other than

speaking with the individual whom the court had spoken with. (T. 338-339) Mr. Sewell had done nothing

to determine who cared for Ms. Boatwright's children, whether they were enrolled in school, etc. Instead, he

had made arrangements to meet with Ms. Boatwright's paramour to acquire her sister's phone number. (T.

340) Since the prosecution had no objection to an adjournment, the court adjourned the case until Thursday

27

(two days later), to find the witness.[7]

When the court met again on Thursday, the witness was still not present and the court adjourned the matter until Monday.  (T. 353, 355)

On Monday, October 24, 1994, the witness was not in court and Mr. Stutman applied for a material witness order for this witness.  The court stated that the People had a subpoena signed and served on Wednesday for her appearance on Thursday and since she did not appear on Thursday, counsel should have applied for the order on Thursday.  (T.  360, 363) The court then reviewed the history of the case in relation to this witness.  When counsel pointed out that there had been reassurances from the witness that she would come in, the court stated:

> That's wonderful.  You should have taken steps to get her in or get a material witness order if you had that I and brought her here Friday, you would have had her here today. (SIC) This case goes way back.  First of all, you answered ready in the TAP part.  You had this case sent to a TAP part last June because you wanted an immediate trial.  You're either ready or not ready.  I've given you now what's tantamount to two weeks to produce this witness; 12 days.  I think that the Court has been more than generous, and I just don't know what you're doing, but I put this case over so far Monday afternoon, Tuesday, Thursday, and now you want a further continuance today.  Your application is denied.  (T. 364-365)

The above colloquy and sequence of events clearly reveals counsel's complete failure to take the necessary and reasonable steps to maintain contact with this pivotal witness in order to ensure her presence for the second trial.  There was clearly no contact between counsel and the witness, with whom he was familiar, between the trials.  Moreover, no attempts were made to contact the witness and secure her presence for the second trial until after the commencement thereof.  Indeed, several times prior to the People resting, the Court inquired of counsel as to the availability of defense witnesses, to which counsel stood mute.  Thus, counsel, only one day prior to having to call this witness, began his efforts to locate her.

---

[7]The court also put the case on for a hearing to determine whether due diligence and unavailability pursuant to C.P.L. 670.10 had been established.  This will be discussed below.

While these efforts were somewhat detailed to the court, it is clear that they were not properly directed or executed.

The People had informed the defense that the witness had moved. Yet the defense looked for her at her old address. A pager number was available but not utilized until the Court intervened and the page was immediately returned. The People had no trouble locating this witness and serving her with a subpoena. When the witness failed to comply with the subpoena, counsel did not apply to the court for a material witness order.[8] Counsel waited until the following Monday to report his inability to produce the witness and to seek a material witness order.

The defendant suffered significant prejudice as a result of counsel's inaction. Ms. Boatwright's testimony was invaluable to the presentation of the defense. Her testimony would have created a reasonable doubt where one did not exist. Moreover, there was only one witness for the prosecution that identified Mr. Edwards as the shooter and the jury's finding of guilty turned on a fairly close credibility issue. This credibility issue would have been challenged more effectively by the defense if Ms. Boatwright's testimony had been available to the jury.

Finally, it cannot be argued that counsel had a strategic reason for failing to remain in contact with the witness or for failing to request a material witness order on Thursday, when the witness failed to respond to the subpoena. There is no indication in the record that counsel had any intention or any basis for wanting this trial to proceed without Ms. Boatwright. Though counsel failed to take steps to determine the whereabouts of the witness prior to the second trial's commencement, he eventually did take those steps. Though the steps were clumsy ones, the fact that he did take them suggests that counsel wanted to bring Ms. Boatwright in before the jury. Similarly, though counsel was delayed in his request for a material witness

---

[8] The court mentioned to counsel, on the record, on October 18, 1994, that the court was disturbed that he had not yet applied for a material witness order. The court, in essence, told counsel to apply to him for the order. (T. 327)

order, he did seek one.  Therefore, it cannot be argued that counsel strategically chose not to pursue Ms. Boatwright as a witness.

b.  **Counsel failed to move pursuant to C.P.L. 670.10 for admission of Ms. Boatwright's prior trial testimony or to make any challenge to the courts' rulings on this issue.**

It is clear that the record is devoid of any application on the part of counsel for the court to consider the admission of Ms. Boatwright's prior trial testimony.   Furthermore, once the witness was located and served by the People with a subpoena, counsel failed to argue that the witness was unavailable since she was failing to respond to process.  While it is clear that counsel wanted Ms. Boatwright's testimony heard by the jury, there is no strategic reason for his failure to conduct all possible steps to have this accomplished. Moreover, Mr. Edwards was demonstrably prejudiced by counsel's failure to bring this testimony before the jury.  Her testimony would have created a reasonable doubt where one did not exist.  This witness was able to describe the shooter and this description was not consistent with Mr. Edward's appearance.

Once defense counsel raised the issue that he was having difficulties in locating Ms. Boatwright, the court, without an application by counsel, opined that the defendant did not have "enough to have the testimony read" and that the only way in which this testimony would be brought before the jury was if the prosecution were to stipulate to its admissibility.  The prosecution indicated that it would not so stipulate. (T. 318-319) Counsel did not dispute the court's conclusion.  He did not comment on it at all.   Later, during the same discussion, the court again stated:

> Now I don't think I have enough at this point to make a decision pursuant to C.P.L to permit the prior sworn testimony, where there was an opportunity for cross-examination, to be read into the record.  There's no question that could be done if both sides stipulated, and I don't see at this point from what I can see, any purpose of delay here, because you don't have the slightest idea where this witness is, nor have you done anything to find her other than sit on her house with an investigator, which seems the first time, until 3 o'clock last night, and how you're investigator is not here.  (T. 325)

30

Again, counsel failed to address the C.P.L. 670.10 issue altogether.  In no uncertain terms, the court informed counsel that if he worked on finding the witness, he might be able to satisfy the requirements under the statute and have the prior testimony read to the jury.  (T. 327)  Defense counsel said nothing in response and did nothing in response.  Later, the court, sua sponte, clarifies his position further.  He states:

> ....I think it's a four-pronged test that one looks at.  The witness has to be either dead– first, they have to be unavailable.  Second thing, that the minutes have to have a completion to them, which they do.  There has to be reliability of the testimony, which it does.  As a matter of fact, the thing – that is, the unavailability.  Then there's definition of unavailability, statutory unavailability: Death.  There's no proof of her death.  Out of the state.  We have to the contrary.  This Court directly has proof.  I don't know, it's information that from whoever this voice who claims to be the father of her child that answered the beeper, he says she's in the State of New York.  And then in the next breath he says he hasn't seen her in a month and a half.  I appreciate that but he doesn't say "I know she left the State of New York and she's on her way to wherever."  You understand? Unavailability.  Unavailability.  You have to show due diligence.  The fourth criteria of unavailability is that she's sick or lame or something, in a coma, or a heart attack.  You have none of that.  I'm sure your investigator hasn't even checked with the welfare people.  I personally think that all he did was that, finally yesterday, because of your desperate situation, and I gave you a continuance until this morning, he finally went and sat on a place where she hasn't been seen and he finally interviewed somebody there to no avail, and I think your chances of finding her are slim and none.  But we'll see.  (T. 335-336)

Defense counsel said nothing in response to the court's description of the defendant's burden pursuant to C.P.L. 670.10.  At the end of the court appearance, the court adjourned the case for two days to "make a determination as to whether or not the criteria....have been met or not.  If they are, then – and if they don't have the witness by Thursday, and if I determine by more information that she's unavailable and there's due diligence, I'll probably let the testimony be read.  I'm going to put – he charge is going over until Monday.......I think in the interests of justice this testimony is essential testimony, and it shouldn't be denied to the defendant.  Now, it would seem that if everybody starts to look for her, and she's not found by Thursday or Friday, I'm going to permit this testimony.  There are cases that I studied that seem to permit

31

this, if due diligence – you know what the word "due diligence" means Mr. Investigator? (Mr. Sewell responds in the affirmative.)   So far we haven't done that, but now you're going to start it." (T. 341-342)

Just before the court adjourned for the day, the court told the parties, unequivocally, that he was inclined to allow Mr. Boatwright's testimony into evidence, so long as they met the statutory requirement of due diligence. He told both parties that he believed it was the just response considering the case would look completely different if her testimony was not in the case. (T. 347-352) The court stated:

> "All right, I want you folks here ten o'clock Thursday with your investigator. I want to hear what he's done. My inclination is if everybody does the right thing, one or two things will happen. Either we'll have a witness or I'll let the testimony be read. I don't think that this defendant should be denied his one and only defense, because then that's not evenhandedness, unless you just haven't used due diligence. I still say the statute has to be satisfied. Most of the cases you'll get to read on this section is where the People have lost their witness. Now why is that? That's quite obvious. If a court – the only time in a defendant's case is where the Court errs in not permitting the testimony to be read, but if the Court permits the testimony to be read for a defendant you don't have much room. But if I permit it to be read for the People, then it's, you know, probably going to be point one in the appellate brief." (T. 347-348)

On Thursday, October 20, 1994, the court began the proceedings by stating that the defendant was still having difficulties getting the witness in and the court asked to reconvene at 2:15 p.m.. (T. 353) There was no application made on the defendant's behalf other than a request for an adjournment. Counsel did not even mention the due diligence hearing or the fact that a subpoena had been served upon the witness on the previous day. (T. 356)   As a result of the lengthy record made on the following Monday morning, it is clear that on Wednesday, October, 19, 1994, the witness was located and a subpoena was served on her. The subpoena was returnable on Thursday the 20th. (T. 363-364)   However, no application by counsel was made in relation to C.P.L. 670.10. Counsel did not even attempt to make an argument on the defendant's behalf. Counsel could have argued that since the witness had been located, due diligence had been exercised and that the witness was refusing to comply with the subpoena, thus allowing the conclusion

32

that she was unavailable.  Instead, the court told counsel:

> ...Now I do grant to you that it's an important witness to you, but that witness has to come here and testify.  I know there's been sightings of this witness and everything else.  I'm not going to put all this stuff on the record.  But I'm absolutely convinced that we could have hold a hearing that you could be successful.  I think the section, 690 or – to read the testimony from the prior trial, you don't have an unavailable witness.  You agree with me?

Mr. Stutman:    I'm sorry?

The Court:  I think you would agree with me on that...  (T. 357)

Even on the next court date, Monday, October 24, 1994, when the witness failed to appear, counsel failed to raise the 670.10 issue.  Though he made an application for a material witness order, he failed to raise the fact that serving the order would have furthered his application to have the prior testimony read to the jury.   This serves as yet another glaring example of ineffective assistance of counsel.

This alone makes clear that counsel was literally spoon fed that which was required to permit the introduction of Ms. Boatwright's prior testimony.  Despite this, counsel failed to take the steps outlined by the court or to make an adequate record to accomplish this.

Counsel was obligated to pursue a defense on behalf of Mr. Edwards as he certainly had a viable defense to present to the jury.  However, defense counsel failed to take any and all steps possible to insure that this defense was presented to the jury.  Counsel had the opportunity to insure Ms. Boatwright's presence to testify before the jury or insure that her prior trial testimony would be set forth to the jury.

Counsel failed to remain in contact with the only witness who was able to set forth his defense.  Five months had passed and counsel made no efforts to insure that this witness would reappear at the second trial.  Furthermore, once counsel realized that his inaction caused a dire situation as he was in desperate straights and was not able to comply with any of the court's demands, he sought a material witness order.  The court had warned him days prior that he was disturbed that a material witness order had not been sought. (T. 327)  Finally, counsel failed to make any application seeking admission of Ms. Boatwright's

33

prior testimony into the record.  All of these failures translate to counsel depriving Mr. Edwards' of an opportunity to have a viable defense presented on his behalf.  While counsel's failure to make this application is disturbing, his failure to attempt to convince the court that he had exercised due diligence or that the witness was unavailable, when the issue was set forth repeatedly by the court, is incomprehensible.

In **People v. Park**, 229 A.D2d 598, 646 N.Y.S.2d 145, the Second Department granted the defendant a new trial, finding that the defendant was denied the effective assistance of counsel.  In this case, trial counsel's failed to present witnesses and other evidence which indicated that injuries that the defendant had suffered as a result of a recent motorcycle accident made it unlikely that he committed the crime for which he was convicted.  His failure to put forth evidence of a valid view of the evidence, suggesting his defense, rose to the level of ineffective assistance of counsel.  This case is analogous to the case at bar. Here, counsel similarly failed to pursue a valid view of the evidence, which was the only way to allow the jury to hear his defense.  Counsel had several opportunities to pursue the presentation of his defense and failed at each juncture.  Therefore, his representation rose to the level of ineffectiveness assistance of counsel.

In **People v. Donovan**, 184 A.D.2d 654, 585 N.Y.S.2d 70, the Second Department reversed the judgment, finding that in the interests of justice he was denied the effective assistance of counsel.  The cumulative effect of counsel's omissions resulted in a failure of defendant's counsel to set forth the defendant's defense.  His counsel failed to make a viable motion for a hearing to admit evidence that would have set forth a defense.  Furthermore, counsel failed to conduct an investigation that could have resulted in a challenge to the lack of probable cause for his arrest; and he failed to seek a missing witness charge. Counsel's ineffectiveness "caused the defendant's defense to be doomed to fail." (**Donovan**, supra, at 656; see, **People v. Kilstein**, 174 A.D.2d 756, 571 N.Y.S.2d 781; **People v. Worthy**, 112 A.D.2d 454, 492 N.Y.S.2d 423)  Counsel's ineffectiveness in the case at bar also caused the defendant's defense to be

34

doomed to fail.  He had a viable defense and several avenues with which to present Ms. Boatwright's

testimony.  His inaction resulted in the jury never hearing Mr. Edward's version of the facts.

In <u>People v. Williams</u>, 206 A.D.2d 331, 615 N.Y.S.2d 23, the court found that counsel's failure to

seek an adjournment or a material witness order to procure attendance of witnesses did not rise to the level

of ineffective assistance of counsel.  In <u>Williams</u>, on the first date of the trial, the defendant informed his

attorney that there was a potential "alibi" witness and his attorney immediately sent an investigator to

interview them and serve then with subpoenas.  These witnesses did not respond to two separate subpoenas.

Also, one of the witnesses, the defendant's girlfriend, refused to come forward during the pendency of the

case.  Counsel did not seek an adjournment or a material witness order to secure the attendance of the

witnesses.  The Court held that the attorney did provide "meaningful representation" (<u>People v. Baldi</u>, 54

N.Y.S.2d 137, 147, 444 N.Y.S.2d 893, 429 N.E.2d 400) stressing the reluctance of the witness to come

forward.

In the case at bar, counsel was aware of both the substance and the significance of the testimony of

the witness dating back to before the first trial.   Though Ms. Boatwright was reluctant to testify as is

evidenced by her failure to respond to the subpoena, her prior trial testimony was available for the jury to

hear.  Counsel failed to make any efforts to convince the court that having her prior testimony read was the

just and appropriate remedy to her failure to appear in court.

Finally, it cannot be argued that there was a strategic reason for counsel's failure to put forth Mr.

Edwards' defense.  First, there is no indication in the record that counsel ever intended his case to go

forward without this significant witness.  Moreover, counsel believed that Ms. Boatwright's testimony at

least contributed, in part, to the inability of the jury to reach a unanimous verdict.  (T. 333)   The court even

made comments throughout the trial that the defendant's case in many ways turned on this witness' valuable

testimony and that the case was completely different without it. (T. 342, 347, 350, 351)

For the foregoing reasons, it is respectfully requested that the court find that counsel's representation was ineffective and that a new trial be ordered.

## POINT IV

## THE DEFENDANT'S SENTENCE SHOULD BE REDUCED IN
## THE INTERESTS OF JUSTICE.

Appellant respectfully requests that this court reduce his sentence in the interests of justice pursuant to its powers under C.P.L. §470.15(3) (**People v. Suitte**, 90 A.D.2d 80, 455 N.Y.S.2d 675 (2d Dept. 1982). This statute enables the appellate court o rectify sentencing disparities, reach extraordinary situations and achieve the imposition of fair sentences in situations where, even if not through an abuse of discretion, an unfair sentence has been imposed.  Thus, an intermediate appellate court has broad, plenary power to modify a sentence that is unduly harsh or severe under the circumstances, even though the sentence may be within the permissible statutory range.  (C.P.L. §470.15 (6)(b); **People v. Delagdo**, 80 N.Y.2d 780, 587 N.Y.S.2d 271 (1992); **People v. Andino**, 681 N.Y.S.2d 518 (1998); **People v. Suhalla**, 97 A.D.2d 857, 469 N.Y.S.2d 246 (1983)).

Mr. Edwards was twenty years old when this incident allegedly occurred.  Prior to the conviction, he not been convicted of any crime.  Finally, the jury's finding of guilt turned on a fairly close credibility issue of only one witness.  **People v. Tortorice**, 142 A.D.2d 916, 531 N.Y.S.2d 414 (1988).  While it may be assumed that the trial court was aware of these facts at the time of sentence, counsel for the defendant (C.Vernon Mason) failed to set forth any of this information in his remarks.  (T. 473-477)  As such, the sentence of twenty to life was excessive.  In the interests of justice, the defendant seeks a reduction of that sentence.

## CONCLUSION

Based on the foregoing, appellant respectfully maintains that the conviction should be reversed and a new trial ordered; or that the judgement be reversed, the indictment dismissed, and the matter remitted to the Supreme Court, New York County, for the purpose of entering an order in its discretion pursuant to C.P.L. §160.50; or that the sentence should be reduced in the interests of justice.

Respectfully submitted,

Karen Smolar, Esq.

38

Case 1:11-cv-00834-JG   Document 1   Filed 01/20/11   Page 50 of 51 PageID #: 50

gree and endangering the welfare of a child under Indictment No. 3701/87. This incident involved a different young girl and occurred on May 21, 1987. By order of the Supreme Court, Queens County (Browne, J.), dated October 13, 1987, the two indictments were consolidated into Indictment No. 2165/86 pursuant to CPL 200.20(2)(b) and (4) on the ground that the offenses were the same or similar in law. For the reasons that follow, we find that this constituted an abuse of discretion warranting reversal in the interest of justice.

[2] Each of the two incidents which gave rise to the consolidated indictment in question was a separate and discrete criminal transaction. There was no testimony proffered that was common to both incidents. There was no factual representation that proof of either event would be material and admissible as evidence-in-chief upon the trial of the other (see, CPL 200.20[2][b]; cf., *People v. Molineux*, 168 N.Y. 264, 61 N.E. 286; *People v. Griffin*, 132 A.D.2d 569, 517 N.Y.S.2d 286). There was no question of identity (cf., *People v. Beam*, 57 N.Y.2d 241, 455 N.Y.S.2d 575, 441 N.E.2d 1093) since there were two eyewitnesses to the first incident who knew the defendant from the neighborhood, and the defendant was caught and held by witnesses to the second incident. Nor was any unique modus operandi established by the prosecution (cf., *People v. Allweiss*, 48 N.Y.2d 40, 421 N.Y.S.2d 341, 396 N.E.2d 735; *People v. Clark*, 129 A.D.2d 724, 514 N.Y.S.2d 487). All requests for consolidation are permissive (CPL 200.20[4]) and directed to the sound discretion of the trial court (see, *People v. Lane*, 56 N.Y.2d 1, 8, 451 N.Y.S.2d 6, 436 N.E.2d 456). The standard for appellate review of the exercise of such discretion has been set forth in *People v. Lane* (supra, at 8, 451 N.Y.S.2d 6, 436 N.E.2d 456):

"Trial courts should generally weigh the public interest in avoiding duplicative, lengthy and expensive trials against the defendant's interest in being protected from unfair disadvantage. While the trial courts must be afforded reasonable latitude in exercising discretion in these matters, we emphasize that compromise of a defendant's fundamental right to a fair trial free of undue prejudice as the *quid pro quo* for the more expeditious disposition of criminal cases will not be tolerated."

In these proceedings we find that the defendant's right to a fair trial was compromised (see, *People v. Jackson*, 77 A.D.2d 630, 430 N.Y.S.2d 126). While the Trial Judge had advised counsel on both sides to refer to the incidents separately, the prosecutor did not comply with the Trial Judge's directions but commingled the events in the presentation of her evidence-in-chief and repeatedly sought to join the two incidents during her summation in spite of the direction by the Trial Judge to desist. At the very outset of her summation, the prosecutor stated: "Some [people] sexually abuse children and attempt to rape them". When an objection to this remark was overruled, she continued: "The evidence in this case has shown you overwhelmingly that the defendant in this case is one of those people". Such an argument seeking to convince the jury to convict based upon a claimed propensity of the defendant to commit the crime was manifestly improper. Furthermore, the prosecutor repeatedly referred to the two victims and incidents jointly so as to reinforce any inclination of the jury to consider the evidence in a cumulative manner (see, *People v. Yant*, 75 A.D.2d 653, 427 N.Y.S.2d 270; see generally, *People v. Sandoval*, 34 N.Y.2d 371, 377–378, 357 N.Y.S.2d 849, 314 N.E.2d 413) in spite of the direction by the Trial Judge to weigh the evidence separately.

[3] The prosecution argues that the defendant has not preserved, as a matter of law, any claim as to the propriety of the order granting consolidation. The record as to that motion consists solely of a notice of motion, an affidavit from an Assistant District Attorney, and a short form order. Most puzzling is the fact that the order is dated approximately *five weeks before* the return date of the motion and indicates only that defense counsel opposed the motion. However, there is no doubt that de-fense counsel, in a motion for a mistrial following the prosecution summation, called the Trial Judge's attention to the improper commingling of the evidence. In any event, we find that the error committed herein was so egregious that we have reached it in the interest of justice.

Since the matters are being remitted for new trials, we would note that the charge as to the defendant's failure to testify was improper (see, *People v. Soto*, 146 A.D.2d 657, 536 N.Y.S.2d 855; *People v. Colon*, 143 A.D.2d 105, 531 N.Y.S.2d 355; *People v. Concepcion*, 128 A.D.2d 887, 513 N.Y.S.2d 811) and should not be repeated on the retrials (see, 1 CJI [N.Y.] 7.05).

We have considered the defendant's remaining contentions and find them to be without merit.



156 A.D.2d 488

The PEOPLE, etc., Respondent,

v.

Terrance REID, Appellant.

Supreme Court, Appellate Division, Second Department.

Dec. 11, 1989.

Defendant was convicted after jury trial in the Supreme Court, Kings County, Greenberg, J., of robbery in first degree, robbery in the second degree, two counts, grand larceny in the third degree, and assault in the third degree, and defendant appealed. Supreme Court, Appellate Division, held that: (1) trial court's refusal to sign material witness order to secure appearance at trial of proposed defense witness, the codefendant, in midst of trial, was not improvident exercise of discretion, and (2) even if trial court should have signed material witness order to secure appearance at trial of codefendant, refusal to do so was harmless beyond reasonable doubt.

Judgment affirmed.

1. Witnesses ⚖20

Trial court's refusal to sign material witness order to secure appearance at trial of proposed defense witness, the codefendant, in midst of trial, was not improvident exercise of discretion, where defense counsel failed to satisfy requirement that application for material witness order be made in writing and subscribed and sworn to by applicant. McKinney's CPL § 620.30, subd. 1.

2. Criminal Law ⚖1170(4)(1)

Even if trial court should have signed material witness order to secure appearance at trial of proposed defense witness, the codefendant, refusal to do so was harmless beyond reasonable doubt, where robbery victim and two eyewitnesses identified defendant as active participant in crime.

Philip L. Weinstein, New York City (Harold V. Ferguson, of counsel), for appellant.

Elizabeth Holtzman, Dist. Atty., Brooklyn (Barbara D. Underwood and Victor Barall of counsel, Diana M. Garcia and Linda Cantoni, on the brief), for respondent.

Before MANGANO, J.P., and BRACKEN, KUNZEMAN and SPATT, JJ.

MEMORANDUM BY THE COURT.

Appeal by the defendant from a judgment of the Supreme Court, Kings County (Greenberg, J.), rendered March 24, 1987, convicting him of robbery in the first degree, robbery in the second degree (two counts), grand larceny in the third degree and assault in the second degree, upon a jury verdict, and imposing sentence.

ORDERED that the judgment is affirmed.

[1] The trial court's refusal to sign a material witness order to secure the ap-

ORDERED that the order is affirmed, with costs.

The defendant Govindan Gopinathan established his entitlement to summary judgment dismissing the complaint insofar as asserted against him as a matter of law. The conclusory allegation of the plaintiff's expert that Gopinathan, a neurologist, misled subsequent doctors by misdiagnosing the plaintiff's pulmonary condition was unsupported by evidence tending to establish the essential elements of malpractice and thus was insufficient to defeat the motion for summary judgment (see, Alvarez v. Prospect Hosp., 68 N.Y.2d 320, 324, 508 N.Y.S.2d 923, 501 N.E.2d 572; Rosado v. Lutheran Med. Ctr., 202 A.D.2d 412, 608 N.Y.S.2d 506; Guida v. Hsu, 187 A.D.2d 485, 590 N.Y.S.2d 742; Burt v. Lenox Hill Hosp., 141 A.D.2d 378, 529 N.Y.S.2d 313; Kane v. City of New York, 137 A.D.2d 658, 660, 524 N.Y.S.2d 751).

O'BRIEN, J.P., ALTMAN, FLORIO, and SMITH, JJ., concur.

267 A.D.2d 246

**The PEOPLE, etc., respondent,**

v.

**Damien EDWARDS, appellant.**

Supreme Court, Appellate Division, Second Department.

Dec. 6, 1999.

Karen Smolar, Kew Gadens, N.Y., for appellant.

Charles J. Hynes, District Attorney, Brooklyn, N.Y. (Roseann B. MacKechnie, Florence M. Sullivan, and Joseph Huttler of counsel), for respondent.

Appeal by the defendant from a judgment of the Supreme Court, Kings County (Rappaport, J.), rendered November 21, 1994, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence.

ORDERED that the judgment is affirmed.

The trial court did not improvidently exercise its discretion by denying the defendant's oral request, in the midst of the trial, for a material witness order to secure the appearance at trial of a proposed defense witness (see, People v. Reid, 156 A.D.2d 488, 548 N.Y.S.2d 769).

The sentence was not excessive (see, People v. Suitte, 90 A.D.2d 80, 455 N.Y.S.2d 675).

The defendant's remaining contentions are either unpreserved for appellate review or without merit.

RITTER, J.P., McGINITY, H. MILLER, and FEUERSTEIN, JJ., concur.



267 A.D.2d 263

**The PEOPLE, etc., respondent,**

v.

**Sergiy ZADOROZHNYI, appellant.**

Supreme Court, Appellate Division, Second Department.

Dec. 6, 1999.

Lynn F.W. Fahey, New York, N.Y. (William A. Loeb of counsel), for appellant.

Richard A. Brown, District Attorney, Kew Gardens, N.Y. (John M. Castellano and Sharon Y. Brodt of counsel), for respondent.

Appeal by the defendant from a judgment of the Supreme Court, Queens County (Finnegan, J.), rendered March 19, 1998, convicting him of murder in the second degree, kidnapping in the first degree, kidnapping in the second degree, and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress statements made by him to law enforcement authorities.

ORDERED that the judgment is affirmed.

We find no basis to disturb the hearing court's determination that the defendant knowingly, voluntarily, and intelligently waived his Miranda rights (see, Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694). The record fully supports the court's finding that the defendant had a sufficient command of the English language to comprehend the import of the Miranda warnings (see, People v. Alexandre, 215 A.D.2d 488, 626 N.Y.S.2d 520; People v. Eismann, 158 A.D.2d 537, 651 N.Y.S.2d 304; People v. Acuna, 145 A.D.2d 427, 430, 535 N.Y.S.2d 407; People v. Tran, 144 A.D.2d 507, 533 N.Y.S.2d 979). The hearing court properly considered the testimony of the People's rebuttal witnesses regarding the language used by the defendant to communicate with them at a correctional facility, in light of the defendant's hearing testimony that he was unable to communicate in English (see, People v. Mendoza, 240 A.D.2d 316, 659 N.Y.S.2d 442).

S. MILLER, J.P., ALTMAN, SCHMIDT, and SMITH, JJ., concur.



267 A.D.2d 240

**In the Matter of William PEARSALL, appellant,**

v.

**Kathleen MARTIN-ZENICK, respondent.**

Supreme Court, Appellate Division, Second Department.

Dec. 6, 1999.

Warren S. Landau, Smithtown, N.Y., for appellant.

James Marinelli, Jr., Fort Salonga, N.Y., for respondent.

In a family offense proceeding pursuant to Family Court Act article 8, the petitioner appeals from an order of the Family Court, Suffolk County (McElligott, J.), entered December 22, 1997, which, after a hearing, dismissed his petition for an order of protection against the respondent.

ORDERED that the order is affirmed, without costs or disbursements.

The Family Court properly dismissed the petition for an order of protection upon its determination that the petitioner had failed to establish by a preponderance of the evidence that the respondent committed acts constituting a cognizable family offense (see, Family Ct. Act §§ 812, 832; Matter of Ross v. Ross, 152 A.D.2d 580, 543 N.Y.S.2d 162). The determination of whether the respondent committed such acts was a disputed factual issue for the Family Court to resolve. As the trier of fact, its determination regarding the credibility of the witnesses is entitled to great weight (see, Matter of Campbell v. Desir, 251 A.D.2d 402, 672 N.Y.S.2d 818; Matter of Platsky v. Platsky, 237 A.D.2d 610, 655 N.Y.S.2d 650).

The petitioner's remaining contentions are without merit.

BRACKEN, J.P., S. MILLER, THOMPSON, and FRIEDMANN, JJ., concur.

267 A.D.2d 255

**The PEOPLE, etc., respondent,**

v.

**Sheba MURPHY, appellant.**

Supreme Court, Appellate Division, Second Department.

Dec. 6, 1999.

Dale Black Pennington, Forest Hills, N.Y., for appellant.